UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **MALIMALO2655@GMAIL.COM** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 22-mj-5038-MAS <br><br> Filed Under Seal |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Chelsea Holliday, being first duly sworn, hereby state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Google LLC (hereafter "Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information in its possession pertaining to the subscriber(s) or customer(s) associated with the account, including the contents of communications.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2018. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations. I am trained and authorized to investigate the offenses alleged herein. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 1956 and 1343, and I am authorized by the Attorney General to request a search and seizure

warrant. Before becoming a special agent, I was employed as a deputy sheriff and investigative agent by the Brevard County Sheriff's Office in Florida. I have experience investigating fraud violations and have been involved with investigations in which the subjects that committed financial fraud violations were successfully prosecuted. As a federal law enforcement officer, I am authorized to execute search and seizure warrants issued under Rule 41 of the Federal Rules of Criminal Procedure.

3. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 ("Wire Fraud"), and 18 U.S.C. § 1956 ("Money Laundering") have been committed by unknown persons. Among other things, there is probable cause to believe that the user or users of the email account[1] **malimalo2655@gmail.com** defrauded a business in Danville, Kentucky out of over $926,000 via a business email compromise (BEC) scam. There is probable cause to believe that a search of the information described in Attachment A will find evidence, instrumentalities, contraband, and/or fruits of these crimes, as further described in Attachment B.

4. The matters set forth in this affidavit are either known personally to me or were related to me by other persons acting in their official capacities as law enforcement officers or employees of both domestic and foreign law enforcement agencies. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

---

[1] On January 14, 2022, the FBI confirmed the above Google email accounts were preserved (Google reference number: 10582570).

## JURISDICTION

5. The investigated offenses occurred in part in Boyle County, in the Eastern District of Kentucky. This Court therefore has jurisdiction to issue the requested search and seizure warrant on Google LLC, because it is "a court of competent jurisdiction," specifically "a district court of the United States (including a magistrate judge of such a court) . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROVIDER INFORMATION

6. Google is the provider of the internet-based account identified by **malimalo2655@gmail.com**. Google provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. Google accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Google services, such as instant messages and remote photo or file storage. Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on Google's website. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment. Google typically does not verify subscriber names. However, Google does verify the e-mail address or phone number provided.

7. Once a subscriber has registered an account, Google provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Google

subscribers can also use that same username or account in connection with other services provided by Google.[2]

8.  In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Google account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an e-mail, the e-mail can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on Google's servers for a certain period of time.

9.  A subscriber's Google account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing; voice calls, video chats, SMS text messaging; and social networking. Depending on user settings, user-generated content derived from many of these services is normally stored on Google's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Google's servers for a certain period of time. Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google

---

[2] Google's other services include: electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

account may be found within such computer files and other information created or stored by the Google subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

10. Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about their use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

11. Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Google in order to track what devices are using Google's accounts and services. Examples of

these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Google accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Google account.

12. Based on my training and experience, I know that providers such as Google use cookies and similar technologies to track users visiting Google's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Google. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Google may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

13. Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another, by virtue of common identifiers, such as

common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

14. Google has developed an operating system for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

15. Based on my training and experience, I have learned that Google collects and retains location data from Android-enabled mobile devices when a Google account user has enabled Google location services. The company uses this information for location-based advertising and location-based search results. This information is derived from GPS data, cell site/cell tower information, and Wi-Fi access points.

16. Location data can assist investigators in understanding the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).

17. Based on my training and experience, I know that subscribers can communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Google typically retain records about

such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

18. In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers), as well as Google-generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

19. As explained above, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Google account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further,

information maintained by Google can show how and when the account was accessed or used. For example, providers such as Google typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Google account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Google account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## PROBABLE CAUSE

20.     The United States government is investigating unidentified individuals for violations of, inter alia, 18 U.S.C. § 1343 ("wire fraud"), 18 U.S.C. § 1344 ("bank fraud"), 18 U.S.C. § 1956 ("money laundering"), and 18 U.S.C. § 1957 ("money laundering spending") (collectively, the "Specified Federal Offenses") involving a scam commonly referred to as business email compromise (BEC), in which a company in Kentucky fell victim to a BEC and sent a wire transfer of over $926,000 to a bank in China.

21.     On October 28, 2021, a company located in Danville, Kentucky, hereafter referred to as the "victim company," received scam emails from whom they believed to be a well-known law firm named Hogan Lovells out of Washington, D.C. The emails were sent from the fictitious

9

email account "john.allison@firm-hoganlovells.com." The subjects who sent the emails to the victim company were purporting to be one of the firm's partners, John Allison. The subjects requested payment from the victim company for an invoice in the amount of $926,770.50 and provided banking information for an account (hereafter "subject account") with HSBC in Hong Kong, China. The same day the request was received by the victim company, the victim company initiated a wire transfer to the subject account for the amount requested, $926,770.50.

22. Later on October 28, 2021, officials with the victim company identified the wire transfer to HSBC Hong Kong as fraud and immediately reported it to the Kentucky State Police, which reported it to the FBI. FBI employees immediately initiated a "kill chain" request in an attempt to freeze the victim's funds, but this request was unsuccessful. On November 5, 2021, the FBI was alerted that the funds had been dispersed from the subject account on November 3, 2021. The present status of the victim's funds is currently unknown. The victim company has been unable to recover any of their money, at this time.

23. The "john.alison@firm-hoganlovells.com" address is a scam email address, designed to resemble a valid email account belonging to Hogan Lovells. According to its website, Hogan Lovells only uses the domains @hoganlovells.com or @ehoganlovells.com. See Fraudulent and Scam Emails/Messages, https://www.hoganlovells.com/en/fraudulent-and-scam-emails-messages (last visited December 30, 2021). Open-source research on the domain "firm-hoganlovells.com" revealed it resolved back to Namecheap.com and was registered on October 21, 2021.

24. In December 2021, the FBI served legal process to Namecheap Inc. (hereafter "Namecheap") for records related to the subject domain "firm-hoganlovells.com." Records

received from Namecheap showed the following account user information attributed to the subject domain:

    Name: Maryse Merunier

    Organization: Meunier Artisants SARL

    Address: 3 Av De Laure BP 102, Gueret, Occintanie, France

    Email: Malimalo2655@gmail.com

    User ID: malimalo2655

    Signup Date: 6/21/2021 1:38:19 PM

    Signup IP: 46.244.28.72

25.    The records from Namecheap also revealed the subject account had registered a total of 14 domains and four of those domains had been "locked" by Namecheap. One domain had abuse reported but the account was still under investigation. The 14 domains are listed below:

    a.    Smtp-mobile02.com

    b.    Smtp5221.com

    c.    Smtp34521.com (abuse reported, locked)

    d.    Securemobile81.com (abuse reported, locked)

    e.    Secure-mobile03.com (unknown reason, locked)

    f.    Mofo-law.com

    g.    Meilleurtaux-zero.com

    h.    Mail3495.com

    i.    Izusushimontreal.com

    j.    Hoganlovells-firm.com (abuse reported, locked)

    k.    Firm-hoganlovells.com

  l.  Clydecolaw.com

  m.  Bafinsecurities.com

  n.  Amf-securities.com (abuse reported)

  26. Open source research on these domains revealed many of them appear to be related to legitimate businesses, however, the actual contact email for the legitimate business is slightly different. This is a very common tactic of subjects who commit cyber crimes such as BEC or phishing scams. This disguises the subjects' identity and makes their communications appear as if they are legitimate in order for them to victimize businesses.

  27. The records from Namecheap also included IP address history associated with the subject account. Open source research on the subject IP addresses revealed most of them were likely coming from virtual private networks (VPNs). I know from my training and experience that VPNs hide your real IP address and are commonly used by individuals committing cyber crimes because they allow the users to conceal their true identity from law enforcement.

  28. I know, based on my experience, that Namecheap communicates with its customers over their registered email addresses, for things like account set up/verification, reports of abuse, receipts for each transaction, and marketing materials. Accordingly, there is probable cause to believe that evidence of the subjects' criminal activities will be found within the subject account.

  29. Finally, in my training and experience, I know evidence of user attribution can be found within records stored on the account, such as location history, search and browsing history, and documents created and stored on the account. Evidence of criminal conduct is also found in these records. For example, individuals who perpetrate business email compromises often research their targets and the companies they intend to impersonate, including publicly available information on prior relationships between the two.

30. Accordingly, there is probable cause to believe that the Specified Federal Offenses have been committed, and that evidence of those offenses will be found within records stored on the subject account.

31. This warrant requests authorization to obtain the following types of records, that require further explanation:

   a. Device identifiers, including cookies, and the records for all accounts linked by cookies. Cookies are small files stored on a user's web browser directory, designed to hold information about the user and his or her device. Cookies can be accessed by web servers, and enable websites to deliver webpages tailored to the particular user. Thus, when a user visits Google.com, Google.com sends information to the browser, which creates cookies. Every time the user returns to Google.com, the browser retrieves and sends the cookies back to Google's server. When different Google accounts are linked by cookies, this suggests that either the same person is accessing the different accounts or different people are accessing the different accounts from the same web browser on the same electronic device. In my experience, training and knowledge, I am aware that with business email compromise cases, perpetrators rarely target only one victim; instead, they perpetrate their crime against numerous victims, often tailoring their email addresses, domain names, and entities they impersonate to the particular victim's business operations. Accordingly, there is probable cause to believe that evidence of the criminal operations will be found in accounts linked by cookies.

   b. The types of services utilized. Google offers a variety of services, and understanding the extent to which the perpetrators use those services is relevant to

the investigation and may provide a basis for further process. For example, Google accounts holders can use Google services for messaging and voice calls. Records demonstrating that these services were used, and transactional information about the use of those services, can help investigators understand how broadly the Google account was used in the planning and execution of the wire fraud.

c. List of installed applications to any Google LLC or Android devices associated with the Accounts. Records of installed applications can similarly provide insight into how perpetrators are using their electronic devices to commit crimes. For example, if the perpetrator in this case uses encrypted messaging services like WhatsApp or cryptocurrency exchange applications on their Android devices, this is relevant and material to this investigation and may provide a basis for further process.

d. Google Drive. Based on my training and experience, I know office productivity applications used to create and edit digital documents often capture metadata that may reveal the identity of the individual and provide other pertinent information, including author, user ID, creation date, modified date, and device type. Google Drive applications are also frequently used by perpetrators of online schemes to keep track of their criminal activities as well as share information between accounts. Perpetrators also capture business logos and images to create documents to impersonate legitimate letterhead and other business documents. These documents and images can be stored within the Google account used to research and create them.

e. Location history. A principal concern for this investigation is user attribution, that is, identifying the perpetrators of this offense. The current case deals with a foreign

bank account in Hong Kong, China, which suggests the subjects may be located outside of the United States and/or have international ties. Location history associated with this account for the previous six months with help the investigation understand if these are domestic or foreign actors and from where they perpetrate their offenses, which will dictate many future investigative steps.

  f. Search history.  In my knowledge, training, and experience, individuals who perpetrate business email compromises often research their targets and the companies they intend to impersonate, including publicly available information on prior relationships between the two.  Obtaining search history related to account will likely reveal valuable insight into the tactics and method of operation of the perpetrators, as well as provide information on other potential victims.

## EXECUTION OF THE WARRANT

32. Google has access to information about the account **malimalo2655@gmail.com.** Thus, I anticipate executing this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose records and other information (including the content of communications) to the government, as particularly described in Section I of Attachment B.

33. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.  The examination may require techniques including, but not limited to, computer-assisted scans, that might expose many parts of the data to human inspection in order to determine whether it is evidence described by the warrant.

34. This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## CONCLUSION

35. Based on the facts set forward in this affidavit, there is probable cause to search information associated with the Google account: **malimalo2655@gmail.com**, as described in Attachment A, for evidence and instrumentalities of crimes, as described in Attachment B.

36. I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, which will then compile the requested records at a time convenient to it within 14 days of the execution of the search warrant, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Chelsea Holliday

Chelsea Holliday
Special Agent
Federal Bureau of Investigation

Attested to by applicant per FRCrP 4.1 by reliable electronic means on March 1, 2022.

HONORABLE MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE